### JAMES G. ROSS v. ROBERT HOUGHTON.

*Replevin—Instructions raising unwarrantable inferences.*

A lumberman's employee asked the foreman to bring a span of gray mares which he owned, from a distant point, but the foreman sold them, and on his return indicated a span of French ponies which he

had brought with him and which he thought would be satisfactory in place of the mares. It did not appear, however, that the mares had been exchanged for the ponies. The lumberman afterwards sold out and the ponies were included in the sale. The employee took possession of them and the purchaser sued him in replevin. The foreman, who was not employed by the purchaser, was a witness for the plaintiff, and was cross-examined as to whether he had not evaded a settlement with the owner of the mares. *Held*, error to so charge the jury as to leave them to infer that the foreman was the purchaser's agent, and that the purchaser was interested in the attempt at a settlement and was involved in any trickery connected therewith.

Error to Marquette. (Grant, J.) June 19.—June 25.

REPLEVIN. Plaintiff brings error. Reversed.

*F. O. Clark* for appellant.

*E. J. Mapes* for appellee.

CAMPBELL, J. This case was presented with another involving title to the same property, but in a way so far different as to require a separate discussion.

This action is replevin for a pair of black French ponies claimed by defendant as his. They were sold plaintiff by the firm of Gordon & Co., who were his predecessors and assignors in the lumbering business in Schoolcraft county. They were bought for Gordon & Co. by Mr. Weller, who was their general agent, and brought up by him from Canada in the summer of 1880 with thirteen or fourteen other teams. Defendant's claim is that when Weller went east that summer, defendant asked him to bring up a team of gray mares that defendant had owned for several years, and that instead of doing this Weller sold them and these ponies were given him instead.

The testimony seems to indicate that these grays were held in Canada under a chattel mortgage which Mr. Gordon redeemed, and that it was not thought worth while from their age and condition to take them to Lake Superior, and pay freight and duties, and so Weller sold them. There is no testimony tending to show that they were exchanged for

the black ponies, and defendant does not claim he so under-
stood. But he does claim that Weller told him he should
have these in lieu of them, although apparently more valu-
able.

The issue, therefore, was simply whether Gordon & Co.
sold or gave these ponies to Houghton to make up for the
gray mares.

While it is difficult to see satisfactory evidence of the
transfer, which would comply with the statute of frauds,
that specific point is not made on this record. But it is
claimed that on the conflicting state of the testimony con-
cerning what is claimed to have been a sale, effect was allowed
to certain evidence which was prejudicial and irrelevant.

It appears that Weller who was in general charge for the
Gordons, was not general agent for Ross, who was repre-
sented in that office by Mr. Conelly, to whom this property
was turned out by Gordon & Co. Among other inquiries
one naturally arose as to how the accounts stood between
Houghton and Gordon & Co., especially as bearing on deal-
ings connected with the horses, which had been employed
more or less in such a way as would be consistent with
defendant's ownership, though not necessarily indicating it.

Defendant's counsel was allowed on cross-examination of
Weller to show that he attempted to get a settlement with
defendant of his account with Gordon & Co., and that some
months before Houghton had seized the ponies out of the
field where they were pastured, the book-keeper had been
told to credit him with $60, as the price brought by the
mares. After being asked about this last attempt at settle-
ment, defendant's counsel were allowed under objection to
ask whether Weller had not, after this suit was begun,
repeatedly agreed and then avoided to meet Houghton for
a settlement. The court ruled that anything which showed
he did not try to get a settlement was material. In his
charge the judge spoke of Weller as agent not only for
Gordon & Co. but also for Ross, which last was not admitted,
if there was anything tending to prove it. He also spoke of
this attempted settlement as not binding on Ross & Co.

unless cognizant of it, and that an attempt at a settlement pending the suit would not have much force.

But the rulings together left the jury at liberty to infer. that Ross might in some way be interested in Weller's attempts to settle with Houghton, and the evident purpose of urging Weller with questions looking towards previous evasions of settlement, must have been to lead to an idea that there was some trickery resorted to for the purpose of affecting this controversy. Calling this material, and speaking of Weller as Ross's agent, could hardly help inducing the jury to connect transactions which had nothing to do with each other. If Gordon & Co. sold the team to defendant, the sale could not be affected by subsequent accountings. And if they did not sell it to defendant, then Ross's title could not be affected by the subsequent sayings or doings of Gordon or Weller. The conclusions of the jury were so peculiar, when compared with all the proofs, that we think it evident they became confused about the relations of the various parties. At all events there was room for it under the rulings.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.